_____
                                        :
SYLVIA CARSON, on behalf of             :
herself and all others similarly situated,  :
                                        :
                      Plaintiff,        :
                                        :   **AMENDED CLASS ACTION COMPLAINT**
vs.                                     :         **(Jury Trial Demanded)**
                                        :
LENDINGTREE, LLC; NEWPORT               :
LENDING CORP.; SOUTHERN                 :
CALIFORNIA MARKETING CORP.;             :
HOME LOAN CONSULTANTS, INC.;            :
CHAPMAN CAPITAL, INC.; and SAGE         :
CREDIT CO.                              :
                                        :
                      Defendants.       :
_____:


### AMENDED CLASS ACTION COMPLAINT

Now comes Sylvia Carson ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, and in support of the Amended Class Action Complaint, states as follows:

### INTRODUCTION

1.      This is a consumer class action lawsuit brought by Plaintiff Sylvia Carson, on behalf of herself and all others similarly situated (the "Class" or "Class Members") throughout the United States whose private personal information including Social Security numbers, income and employment information, names, addresses, email addresses, and/or phone numbers were intentionally and unlawfully sold to third parties by Defendant LendingTree, LLC

1

("LendingTree") in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA"), the common law, and North Carolina statutory law. LendingTree willfully or recklessly failed to limit the furnishing of private consumer information to the permissible purposes outlined under the FCRA. As a result, certain of LendingTree's employees and ex-employees accessed Class Members' consumer information and sold it to third parties, including Defendants Newport Lending Corporation ("Newport"), Southern California Marketing Corporation ("Southern California Marketing"), Home Loan Consultants, Inc. ("Home Loan Consultants"), Chapman Capital, Inc. ("Chapman"), and Sage Credit Co. ("Sage") (collectively referred to as "Mortgage Lenders") without the consent of Class Members. LendingTree failed to prevent or detect the ongoing unauthorized activity, which occurred for more than a year from October of 2006 until early 2008.

2.     Defendants' actions constitute violations of the FCRA, common law negligence, breach of implied contract, invasion of privacy, tortuous interference with contractual relations, unjust enrichment, and North Carolina Gen. Stat. § 75-1.1 *et seq.* for unfair methods of competition.

3.     Plaintiff and the Class seek damages suffered as a result of Defendants' practices, including but not limited to statutory damages, compensatory damages, and injunctive relief.

## PARTIES

4.     Plaintiff Sylvia Carson is a resident of Cobb County in Kennesaw, Georgia.

5.     Defendant LendingTree, LLC is a Delaware limited liability company with its headquarters located at 1115 Rushmore Drive, Charlotte, NC 28277. Defendant provides financial information services throughout the United States, including engaging in the practice of

2

assembling and evaluating consumer credit information online for the purpose of furnishing consumer credit data to third party lenders.

6.     Defendant Newport Lending Corp. is a corporation organized under the laws of the State of Nevada.  Newport's headquarters are located at 3 San Joaquin Plaza 255, Newport Beach, CA 92660.  Newport provides personal loans to consumers.

7.     Defendant Southern California Marketing Corp. is a corporation organized and existing under the laws of the State of California, with its headquarters located in California.  On information and belief, Southern California Marketing offers loans to consumers.

8.     Defendant Home Loan Consultants, Inc. is a corporation organized and existing under the laws of the State of California.  Home Loan's headquarters are located at 6815 Flanders Drive, Suite 150, San Diego, CA 92121.  Home Loan Consultants offers mortgages, refinancing, and home equity loans to consumers.

9.     Defendant Chapman Capital, Inc. is a corporation organized and existing under the laws of the State of California.  Chapman's headquarters are located at 1795-C N. Willow Woods Drive, Anaheim, CA 92807.  On information and belief, Chapman offers loans to consumers.

10.     Defendant Sage Credit Co. is a corporation organized and existing under the laws of the State of Delaware.  Sage's headquarters are located at 8001 Irvine Center, Suite 200, Irvine, CA 92618.  Sage is a mortgage company that provides mortgages, home equity loans, refinancing, and debt consolidation loans to consumers.

## JURISDICTION

11.     This Court has jurisdiction over the federal claim herein pursuant to 28 U.S.C.

3

§1331, federal question jurisdiction. This Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. §1367. Further, this Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. 28 U.S.C. §1332(d)(2)(A).

12. This Court has personal jurisdiction over LendingTree because LendingTree has its headquarters in, and conducts substantial business in, North Carolina and throughout the United States.

13. Venue properly lies in this district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

14. LendingTree describes itself on its website as an online lending services exchange that matches lenders with borrowers seeking mortgage, home equity, automobile, personal, and credit card loans. Consumers complete an online loan request on LendingTree's website, then LendingTree matches the consumers with up to four lenders based on various matching criteria.

15. As part of the application process, LendingTree obtains consumers' confidential information, including their Social Security number, income and employment information, name, address, email address, and phone number. LendingTree then analyzes the information and provides it to appropriate lenders to respond to consumers' loan requests.

16. In or around March of 2007, Plaintiff submitted a loan application containing private data to LendingTree, via LendingTree's website.

4

17. On April 21, 2008, LendingTree publicly announced the following on its website:

> Recently, LendingTree learned that several former employees may have
> helped a handful of mortgage lenders gain access to LendingTree's
> customer information by sharing confidential passwords with the lenders. .
> . . We promptly made several system security changes. We also brought
> lawsuits against those involved.
>
> Based on our investigation, we understand that these mortgage lenders
> used the passwords to access LendingTree's customer loan request forms,
> normally available only to LendingTree-approved lenders, to market loans
> to those customers. The loan request forms contained data such as name,
> address, email address, telephone number, Social Security number, income
> and employment information. We believe these lenders accessed
> LendingTree's loan request forms between October 2006 and early 2008.

18. In addition to receiving unwanted solicitations from lenders, Class Members are

at risk of fraud and identity theft. LendingTree advised its customers as follows:

> [W]e suggest you get a free credit report. Look for any accounts you
> didn't open and/or inquiries from creditors that you didn't initiate. If you
> see anything you don't understand, contact the credit bureau. If you see
> anything suspicious, you may want to file a fraud alert with the bureaus.

19. LendingTree did not disclose how many customers' personal data was affected by

the breach. However, according to its website, it processed more than 23 million loan requests

since its inception in 1998.

20. LendingTree filed a civil complaint in the Superior Court of Orange County,

California, No. 00062376, against several entities on April 21, 2008 (the "State Ct. Compl.").

The complaint stated the following, in relevant part:

> 18. Plaintiff [LendingTree] operates an online network that helps match
> consumers and lenders, with the goal of providing consumers with a competitive
> advantage when seeking a mortgage loan product. Plaintiff essentially provides a
> marketplace that connects consumers with interested lenders that submit
> competitive offers for these mortgage loan products.
>
> 19. By visiting Plaintiff's website and completing a "qualification form"

5

("QF"), consumers interested in purchasing a mortgage loan product are able to receive "bids" from up to four lenders. The QF includes the consumer's confidential information, contact information, and various other nonpublic information. This information makes it possible for lenders to evaluate the creditworthiness of consumers.

20.     Plaintiff utilizes a propriety system known as "Apex" to store the completed QFs received from consumers. Consumers that have completed a QF on the Plaintiff's website are known as "leads."

21.     Plaintiff enrolls financial services companies (including banks, thrifts, and mortgage companies) that are interested in making mortgage loans to consumers. These companies are known as "Network Lenders." Currently about 300 Network Lenders participate in Plaintiff's online marketplace. . . .

22.     After a QF is completed, Plaintiff forwards the lead to roughly four Network Lenders based on the consumer's credit data contained in the QF and the lending criteria specified by the Network Lender. Network Lenders are then able to quote offers to the consumer. . . . These lenders, and only these lenders, are given authorized access to the Apex system containing the completed QF and contact information for the lead. These lenders are provided remote access to the LendingTree system to allow them to prepare their offers and follow up with the leads in the future. Importantly, lenders' access to the Apex system is limited to only the specific consumers for which they have been sent leads. Each lender is assigned a specific user name and password in order to log-on to and access the Apex system for the information submitted by the lender's designated leads.

23.     Plaintiff receives various fees from Network Lenders in exchange for the leads and access to the Apex system. . . .

        . . . .

25.   From Plaintiff's inception, earning the trust of its customers has been one of Plaintiff's priorities. Customers expect Plaintiff to ensure the security of their sensitive confidential information and Plaintiff regards safeguarding its customers' privacy to be an essential obligation. . . .

        . . . .

27.     Preventing the disclosure of customer information to unauthorized persons is of significant importance to Plaintiff and its customers.

        . . . .

6

31.     Jarod Beddingfield ("Beddingfield") was employed by [LendingTree] in various positions, including Vice President of Sales, from June 2001 until May 2007.  In these positions, Beddingfield was given administrative access to the Apex system.  Beddingfield's access was essential to the performance of his job duties.

.  .  .  .

33.     Beddingfield's employment at [LendingTree] was terminated on or about May 11, 2007.

34.     Upon information and belief, during his employment and since his termination Beddingfield has repeatedly .  .  . reveal[ed] confidential information of both [LendingTree] and its customers to competitors and other individuals not affiliated with [LendingTree].

35.     David Anderson ("Anderson") was employed by [LendingTree] in the position of Senior Vice President for New Business Development until suspended in April 2006 and subsequently terminated in June 2006.  In this position, Anderson was given administrative access to the Apex system.  This access was essential to the performance of his job duties.

.  .  .  .

38.     Upon information and belief, during his employment and since his termination Anderson has repeatedly .  .  . reveal[ed] confidential information of both [LendingTree] and its customers to competitors and other individuals not affiliated with [LendingTree].

39.     Upon information and belief, the entity defendants – Newport, Sage, Chapman, and Home Loan Consultants ("Entity Defendants") are mortgage lenders in direct competition with the Network Lenders.

40.     Newport was a Network Lender and entered into a Network Agreement with [LendingTree] on or about July 1, 2004.  Pursuant to that Network Agreement, Newport was authorized to access only those LendingTree leads assigned to Newport by Plaintiff, and was obligated to pay LendingTree for any such leads assigned.  Newport was authorized to use only those Apex passwords assigned by LendingTree to access Newport's assigned leads in Newport's dedicated Apex account.  Newport's Network Agreement was terminated by [LendingTree] on or about March 11, 2008.

41.     Sage was a Network Lender and entered into a Network Agreement with [LendingTree] on or about November 13, 2007.  Pursuant to that Network

Agreement, Sage was authorized to access only those LendingTree leads assigned to Sage by Plaintiff and was obligated to pay LendingTree for any such leads assigned. Sage was authorized to use only those Apex passwords assigned by LendingTree to access Sage's assigned leads in Sage's dedicated Apex account. Sage's Network Agreement was terminated by [LendingTree] on or about March 6, 2008.

42.     Home Loan Consultants was a Network Lender and entered into a Network Agreement with [LendingTree] on or about November 30, 2007. Pursuant to that Network Agreement, Home Loan Consultants was authorized to access only those LendingTree leads assigned to Home Loan Consultants by Plaintiff, and was obligated to pay LendingTree for any such leads assigned. Home Loan Consultants was authorized to use only those Apex passwords assigned by LendingTree to access Home Loan Consultants' assigned leads in Home Loan Consultants' dedicated Apex account. Home Loan Consultants' Network Agreement was terminated by [LendingTree] on or about April 10, 2008.

43.     On information and belief, both during and after their employment with [LendingTree], Anderson and Beddingfield each used their administrative access to ascertain the user names and Apex passwords of various other Network Lenders and [LendingTree's] employees. Anderson and Beddingfield then illegally . . . distributed the user names and passwords of [LendingTree's] employees and [LendingTree's] other Network Lenders to Newport, Southern California Marketing, Chapman, and/or Home Loan Consultants.

44.     On information and belief, Newport and Southern California Marketing paid Anderson and Beddingfield for the stolen usernames and passwords necessary to access the Apex system. Newport and/or Southern California Marketing thus obtained the ability to illegally log-on to and access the Apex system and misappropriate leads and confidential information.

45.     On information and belief, in addition to using the stolen leads to contact consumers itself, Newport and/or Southern California Marketing also sold certain usernames and passwords or the stolen leads to Sage, Chapman, and/or Home Loan Consultants to enable these entities to obtain unauthorized access to the Apex system and to use the information to contact the consumers to provide the loan products, resulting in damage to [LendingTree].

46.     On information and belief, Newport and/or Southern California Marketing used illegally-obtained Apex passwords on a regular basis to download newly-submitted QFs from the Apex system. Newport then distributed the names of [LendingTree's] customers and their personal information to its loan officers, who contacted the customers directly. Newport also distributed the names of

8

Plaintiff's customers and their personal information to Sage and other Entity Defendants, all of which knew that Newport and/or Southern California Marketing had illegally obtained the information.

47.     On information and belief, Chapman and Home Loan Consultants paid Anderson and Beddingfield for the stolen usernames and passwords necessary to access the Apex system. Chapman and Home Loan Consultants thus obtained the ability to illegally log-on to and access the Apex system and misappropriate leads and confidential information.

48.     On information and belief, Chapman and Home Loan Consultants used illegally-obtained Apex passwords on a regular basis to download newly-submitted QFs from the Apex system. Chapman and Home Loan Consultants then distributed the names of [LendingTree's] consumers and their personal information to its loan officers, who contacted the customers directly.

49.     On information and belief, the scheme resulted in hundreds of unauthorized log-ons to the Apex system.

21.     LendingTree filed a similar complaint in the North Carolina General Court of Justice, Superior Court Division, No. 08-CVS-9108, against Jarrod Beddingfield, David Anderson, and Closing USA, LLC on April 21, 2008. The allegations were substantially similar to the allegations in the California state court complaint.

22.     Despite LendingTree taking the time to hire counsel and file lawsuits on its own behalf on April 21, 2008, LendingTree failed to notify Class Members until that same date, April 21, 2008, that their personal data had been breached. Presumably, LendingTree knew about the breach before hiring counsel to sue the unauthorized third parties and its former employees. LendingTree should have notified Class Members of the breach at that time, *i.e.*, when it first learned of the breach. The delay in notification deprived Class Members of the opportunity to scrutinize lender communications for unauthorized contacts, monitor their credit histories for misuse of personal information, and take other protective measures in response to the breach.

23.     As noted in LendingTree's California state court complaint, Jarod Beddingfield

and David Anderson repeatedly misappropriated confidential information both before and *after* they were terminated by LendingTree.  (State Ct. Compl. ¶¶ 34, 38.)  The fact that Beddingfield and Anderson continued to access customer data after their termination casts doubt on LendingTree's procedures to freeze Beddingfield's and Anderson's data access rights, strengthen its security procedures, and otherwise improve its data access controls after being on notice of the data breach.

24.      LendingTree noted on the Privacy Policy section of its website that it "will not share information with other lenders not disclosed to you."  It also noted that "only . . . authorized third-party service providers are permitted to access personal information, and they may do so only for permitted business functions."  LendingTree breached these contractual terms and failed to meet these representations.

25.      Class Members' private information has been improperly sold and/or disclosed to multiple third parties, including the Mortgage Lender Defendants, by LendingTree and its agents in violation of the FCRA.  LendingTree is responsible and liable here for the actions of its agents.

26.      Plaintiff at no time agreed to allow LendingTree or its agents to disseminate her private information to unauthorized third parties including the Mortgage Lender Defendants.

27.      On or around April 24, 2008, Plaintiff received a letter from LendingTree stating that her personal information was affected by the data breach.  The letter encouraged her to obtain a copy of her credit report.  She did obtain her credit report, and she discovered that two fraudulent phone accounts had been opened in her name. She has since had those accounts removed.  She also signed up for a credit monitoring service at an approximate cost of $115.

10

**The Arbitration Provisions In LendingTree's Terms of Use Agreement Are
Procedurally And Substantively Unconscionable And Should Not Be Enforced**

28.     Plaintiff and Class members sought LendingTree's services through

LendingTree's website.  The website contains a lengthy single spaced Terms of Use Agreement.

29.     On the Terms of Use Agreement, there is a section entitled "Dispute Resolution,"

which contains various arbitration provisions.  The arbitration provisions state in part:

> Any claim or controversy arising out of or relating to the use of the Websites, to
> the goods or services provided by LendingTree, or to any acts or omissions for
> which you may contend LendingTree is liable, including but not limited to any
> claim or controversy as to arbitrability ("Dispute"), shall be finally, and
> exclusively, settled by arbitration.  The arbitration shall be held before one
> arbitrator under the commercial arbitration rules of the American Arbitration
> Association ("AAA") in force at that time...In any arbitration, LendingTree will
> pay the filing fee, plus the costs associated with the first day of arbitration, with
> the remaining costs of arbitration paid by the non-prevailing party . . . .
>
> . . .
>
> . . . The arbitrators shall not have the power to award damages in connection with
> any Dispute in excess of actual compensatory damages and shall not multiply
> actual damages or award consequential, punitive or exemplary damages, and each
> party irrevocably waives any claim thereto . . . .  The agreement to arbitrate shall
> not be construed as an agreement to the joinder or consolidation of an arbitration
> under this agreement with an arbitration of disputes or claims of any non-party,
> regardless of the nature of the issues or disputes involved.  To the fullest extent
> permitted by applicable law, no arbitration under this Agreement shall be joined
> to an arbitration involving any other party subject to this Agreement, whether
> through class arbitration proceedings or otherwise.
>
> . . .
>
> THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND
> LENDINGTREE WILL BE RESOLVED BY BINDING ARBITRATION.  YOU THUS
> GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR
> RIGHTS.  YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING
> CLASS ACTIONS.  YOUR RIGHTS WILL BE DETERMINED BY NEUTRAL
> ARBITRATORS AND NOT A JUDGE OR JURY . . . .
>
> . . .

11

Should a Dispute arise and should the arbitration provisions herein become inapplicable or unenforceable, or in any instance of any lawsuit between you and LendingTree, the parties agree that jurisdiction over and venue of any suit shall be exclusively in the state and federal courts sitting in Mecklenburg County, North Carolina. If either party employs attorneys to enforce any right in connection with any Dispute or lawsuit, the prevailing party shall be entitled to recover reasonable attorneys' fees.

30.     As set forth above, these arbitration provisions contain a choice of law provision stating that North Carolina law applies to any disputes among the parties.

31.     Under North Carolina law, these provisions, taken together, are procedurally and substantively unconscionable and should not be enforced. See Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93 (Jan. 25, 2008).

32.     Hereinafter, the entire section on arbitration, set forth above, shall be referred to as the "Arbitration Clause."

33.     The Arbitration Clause is a standard boiler-plate clause, drafted by LendingTree. It is a standard form contract of adhesion.

34.     Plaintiff and Class Members were not aware of the Arbitration Clause when they contacted LendingTree for services, through LendingTree's website.

35.     LendingTree and its representatives never took any actions to make Plaintiff and the Class aware of the Arbitration Clause.

36.     Plaintiff and Class Members did not negotiate the terms of the Arbitration Clause with LendingTree, and they were not provided any opportunity to do so.

37.     Plaintiff and the Class had no meaningful choice with regard to whether to be subject to the Arbitration Clause.

38.     LendingTree would not have provided services to Plaintiff and the Class without

12

the Arbitration Clause being in place, as is.

39.     LendingTree would not have been willing to negotiate the terms of the Arbitration Clause with Plaintiff or Class Members.

40.     As individual consumers, Plaintiff and Class Members had unequal bargaining power with regard to the Arbitration Clause as against this large corporate entity, LendingTree. Plaintiff and Class Members were forced to accept LendingTree's terms.

41.     Plaintiffs and Class Members are relatively unsophisticated consumers contracting with a large corporate entity, LendingTree, which drafted the Arbitration Clause and included it as boilerplate language in its Terms of Use Agreement appearing on its website.

42.     The Arbitration Clause is completely one-sided, and contains several harsh oppressive terms.

43.     Under the Arbitration Clause, LendingTree will only pay for the first day of arbitration, and Plaintiff and Class Members would then be required to bear all costs remaining after that day.

44.     In addition, under the Arbitration Clause, if the parties employ lawyers, the losing party to a dispute must pay for the prevailing party's attorneys' fees.

45.     The costs of arbitration, including the compensation rates of arbitrators, can be prohibitively high.

46.     Plaintiff has limited financial resources and would be unable and/or unwilling to bear the high costs of arbitration.

47.     The prohibitive costs of arbitration facing Plaintiff are not present in this class action litigation.

48.     In the present lawsuit, Plaintiff has entered into a contingency fee agreement with her attorneys, so that Plaintiff herself is not personally responsible for paying her attorneys' fees.

49.     Also, under the contingency agreement, Plaintiff's attorneys agree to advance all costs of litigation.  Plaintiff would be unable and/or unwilling to hire and pay a lawyer on an hourly basis, particularly in light of her relatively small damages.

50.     Thus, the expected cost differential between arbitration and the present class action suit is substantial.  The cost difference is so large it would deter Plaintiff from asserting her claims in arbitration.

51.     The Arbitration Clause also prohibits the joinder of an arbitration with any other arbitrations, including class arbitrations; it states that consumers must give up their rights to participate or bring class actions; and it prohibits the arbitrator from awarding in excess of actual damages, or from awarding consequential, punitive, or exemplary damages.  It only allows for actual compensatory damages.

52.     Plaintiff's damages in this case are relatively small.

53.     Given the relatively small size of Plaintiff's damages, the prohibition on joining one arbitration proceeding with any other individual or class arbitration proceeding, the limitation on any damage award, and the prohibition on class actions, it seems unlikely any attorney would represent Plaintiff in pursuing her claims, whether in arbitration or in an individual lawsuit.

54.     The prohibition on the joinder of an arbitration prevents an aggrieved party from sharing the high costs of arbitration with others.

55.     The prohibition on joinder of arbitrations and of class actions contributes to the

14

financial inaccessibility of the arbitration forum because it deters plaintiffs and lawyers from bringing a case with low damage amounts in the face of high arbitration costs which cannot be shared with others.

56.     The combination of the high costs of arbitration, the loser-pays provision, and the prohibition on joinder of arbitration and on class actions, creates a barrier to pursuing arbitration, which is substantially greater than that present in the instant class action suit.

57.     The prohibitions mentioned above makes the Arbitration Clause completely one-sided, because the right to join multiple or class arbitrations together, or to pursue class actions, would only benefit Plaintiff and the Class.

58.     While LendingTree has unilaterally chosen the forum in which to resolve disputes, it has also imposed the oppressive provisions of the Arbitration Clause on all aggrieved parties so as to limit their access to the forum chosen by LendingTree.

59.     Because of its cost-shifting provisions and prohibition on joinder of arbitrations and on class actions, the Arbitration Clause effectively deters aggrieved parties from asserting their rights.

60.     The only realistic way Plaintiff can prosecute her claims is by entering into a contingency fee agreement with her attorneys and by asserting her claims in this class action suit. This class action suit allows consumers with limited financial resources and with relatively small damages to assert their claims and seek vindication of their rights.

61.     For all of these reasons, LendingTree's Arbitration Clause is procedurally and substantively unconscionable, and should not be enforced.

## CLASS ACTION ALLEGATIONS

62.     This action is brought by Plaintiff Sylvia Carson, individually and as a class action, on behalf of all persons or entities whose personal or financial information was disclosed by LendingTree or its ex-employees to unauthorized third parties (the "Class"). The Class does not include Defendants or their officers, directors, agents, or employees.

63.     Class certification is appropriate under Federal Rule of Civil Procedure 23(a) and 23(b).

64.     On information and belief, the Class is comprised of thousands or millions of consumers, making joinder of such consumers impracticable. Litigation of the claims in a class context will provide substantial benefits and economies to the parties and the Court.

65.     The rights of each Class Member were violated in a similar fashion based on Defendants' uniform actions.

66.     Questions of law and fact common to the Class predominate over questions that may affect individual Class Members, including the following:

          a.      Whether LendingTree or its agents disclosed or otherwise provided access to Class Members' private information to unauthorized third parties;

          b.      Whether Defendants' conduct alleged herein violated the FCRA;

          c.      Whether Defendants' unlawful conduct was willful, reckless, or negligent for purposes of the FCRA;

          d.      Whether LendingTree owed duties to Class Members to protect their personal information;

          e.      Whether LendingTree breached its duties it owed to Class Members;

16

f.      Whether LendingTree failed to exercise reasonable care in supervising its employees and monitoring their access to and/or use of passwords and other information which allowed access to Class Members' private information;

g.      Whether LendingTree entered into and breached implied contracts with Class Members regarding the safeguarding of their private information;

h.      Whether the Mortgage Lender Defendants violated the state common law and statutory claims set forth herein;

i.      Whether Class Members sustained damages, and if so, what is the proper measure of those damages; and

j.      Whether statutory damages under the FCRA, 15 U.S.C. § 1681n(a)(1)(A), are proper in this matter.

67.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that are antagonistic to, or that irreconcilably conflict with, the interests of the Class.

68.     Plaintiff has retained competent counsel who are experienced in class action litigation.

69.     A class action is superior to all other methods for the fair and efficient adjudication of Class Members' claims.

70.     Certification of a Class to resolve this dispute will reduce the possibly of repetitious litigation involving thousands or millions of Class Members.

## COUNT I

## INTENTIONAL VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (as to LendingTree, Newport, and Southern California Marketing)

71.     Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

72.     The Fair Credit Reporting Act ("FCRA") was created to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commence for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. §1681(b).

73.     The FCRA imposes the following duty: "Every consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 604 [15 U.S.C. § 1681b]." 15 U.S.C. § 1681e(a). Section 604, 15 U.S.C. § 1681b, sets forth various permissible purposes for the furnishing of consumer reports. LendingTree's disclosure of consumer information to unauthorized third parties did not comply with any of the permissible purposes set forth in 15 U.S.C. § 1681b.

74.     The FCRA defines "consumer reporting agency" as follows:

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of *assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties*, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f) (emphasis added).

75.     The FCRA defines "consumer report" as follows:

18

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency *bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part for the purpose of serving as a *factor in establishing the consumer's eligibility for*

> (A) *credit* or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 604 [15 U.S.C. §1681b].

15 U.S.C. §1681a(d)(1) (emphasis added).

76.     LendingTree is a "consumer reporting agency" under the FCRA. LendingTree disclosed in its California state court complaint that it assembles information "that makes it possible for lenders to evaluate the *creditworthiness* of consumers." (State Ct. Compl. ¶ 19) (emphasis added). LendingTree also disclosed the following on the Frequently Asked Questions page of its website:

> On the LendingTree network, Lenders provide to us criteria about the type of loan (for example, loan amount, whether purchase, refinance, or equity loan) and the type of loan customer (for example, state of residence or *creditworthiness*) in which the Lender is interested. LendingTree, LLC will provide your information to up to five Lenders whose criteria match your profile.
>
>        . . . .
>
> [I]n all cases, LendingTree pulls your *credit report* when you complete a loan request.
>
> (Emphasis added.)

Thus, LendingTree assembles and/or evaluates consumer credit information (creditworthiness information) and furnishes it to third party lenders.

77.     LendingTree furnishes "consumer reports" to third parties under the FCRA. Class

Members provided LendingTree with their Social Security number and employment and income information, among other information. LendingTree then obtained Class Members' credit reports. Together, that information had a direct "bearing on [Class Members'] credit worthiness" and served as a "factor in establishing the consumer's eligibility for . . . credit." 15 U.S.C. §1681a(d)(1).

78. Class Members are "consumers" as defined and construed under the FCRA, 15 U.S.C. §1681a(c).

79. LendingTree received fees for assembling consumer information.

80. LendingTree used the facilities of interstate commerce for purposes of the FCRA when it collected Class Members' private information via its website and shared that information with third parties.

81. In conscious disregard for the rights of Class Members, LendingTree willfully or recklessly failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the permissible purposes outlined in the FCRA.

82. LendingTree and its former employees obtained Class Members' private information, and sold or disseminated it to unauthorized third parties for no permissible purpose under the FCRA.

83. LendingTree is responsible and liable for its employees' actions as agents of Defendant.

84. LendingTree willfully or recklessly failed to properly: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

85.     Defendants Newport and Southern California Marketing are also consumer reporting agencies as defined under the FCRA because they, for monetary fees, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing credit reports to third parties, and use interstate commerce for the purpose of preparing or furnishing consumer reports. The consumer information disseminated or otherwise provided access to by Newport and Southern California Marketing were consumer reports as defined under the FCRA.

86.     Newport and Southern California Marketing, with full knowledge that the consumer information was unlawfully obtained, deliberately sold, disseminated, and/or otherwise provided access to Class members' consumer information to third parties without the consent of Class members, and for no permissible purpose under the FCRA.

87.     The FCRA states the following with respect to damages:

(a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000
>
> . . . .
>
> (B) such amount of punitive damages as the court may allow; and
>
> (C) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

88.     Class Members have been damaged by Defendants' actions. As a result, Class Members are entitled to actual damages sustained or statutory damages of not less than $100 and

Case 3:08-cv-00247-FDW-DCK   Document 5   Filed 06/23/08   Page 21 of 36

not more than $1,000, as well as punitive damages, litigation costs, and attorney's fees.

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

### (as to LendingTree, Newport, and Southern California Marketing)

89.     Plaintiff re-alleges paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     Defendants engaged in at least negligent, if not willful or reckless, conduct in violating the FCRA.

91.     In negligent disregard for the rights of Class Members, Defendants failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the permissible purposes outlined in the FCRA.

92.     Defendants and LendingTree's former employees obtained Class Members' private information, and sold or disseminated it to unauthorized third parties for no permissible purpose under the FCRA.

93.     LendingTree is responsible for its employees' actions as agents of LendingTree.

94.     LendingTree negligently failed to properly: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to consumer information.

95.     Newport and Southern California Marketing negligently violated the FCRA in selling or otherwise disseminating Class Members' consumer information to third parties for no permissible purpose under the FCRA.

96.     The FCRA states the following with respect to damages:

Case 3:08-cv-00247-FDW-DCK   Document 5   Filed 06/23/08   Page 22 of 36

(a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) any actual damages sustained by the consumer as a result of the failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o(a).

97.    Class Members have been damaged by Defendants' actions.  As a result, Class Members are entitled to actual damages sustained, as well as litigation costs and attorney's fees.

## COUNT III

## NEGLIGENCE

## (as to LendingTree)

98.    Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

99.    LendingTree came into possession of Class Members' private information and had a duty to exercise reasonable care in safeguarding that information.

100.    LendingTree owed a duty to Class Members to properly: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

101.    As noted in LendingTree's California state court complaint: "Customers expect [LendingTree] to ensure the security of their sensitive confidential information and [LendingTree] regards safeguarding its customers' privacy to be an essential obligation."  (State

23

Ct. Compl. ¶ 25.)  Also, "[p]reventing the disclosure of customer information to unauthorized persons is of significant importance to [LendingTree] and its customers."  (State Ct. Compl. ¶ 27.)  This illustrates LendingTree's general duty to Class Members regarding data security.

102.    LendingTree, through its actions, breached its duties to Class Members.

103.    LendingTree's employees misappropriated consumer information for more than a year, from "between October 2006 and early 2008."  According to LendingTree's California state court complaint, "the scheme resulted in hundreds of unauthorized log-ons to the Apex system."  (State Ct. Comp. ¶ 49.)  Also, according to the California state court complaint, Beddingfield and Anderson repeatedly misappropriated consumer data both before and after they were terminated from LendingTree.  The length of the breach, the fact that hundreds of unauthorized log-ons were permitted, and the fact that LendingTree's former employees still had access to LendingTree's customer data even after they were terminated casts doubt on the adequacy of LendingTree's procedures to: (i) supervise its employees; (ii) monitor for unauthorized access to or use of consumer information; and/or (iii) adopt procedures to prevent or detect unauthorized access to or disclosure of consumer information.

104.    LendingTree's violation of the FCRA serves as further evidence of its breach of duties owed to Class Members.  This constitutes negligence *per se*.

105.    LendingTree also had a duty to timely disclose to Class Members that their private information had been, or was reasonably believed to have been, compromised. LendingTree breached this duty.  LendingTree investigated the breach, hired legal counsel, and filed complaints in state court against certain third parties and LendingTree's former employees on April 21, 2008.  LendingTree did not notify Class Members about the breach until that same

date, April 21, 2008.  Presumably, LendingTree knew about the breach before hiring counsel to sue the unauthorized third parties and its former employees.  LendingTree should have notified Class Members of the breach at that time, *i.e.*, when it first learned of the breach.  The delay in notification deprived Class Members of the opportunity to scrutinize lender communications for unauthorized contacts, monitor credit histories for misuse of personal information, and take other protective measures in response to the breach.

106.    The breaches of duties were reasonably foreseeable to LendingTree.

107.    But for LendingTree's breach of duties, Class Members' private information would not have been compromised.  Class Members' private information was compromised as a direct and proximate result of LendingTree's breach.

108.    Class Members suffered damages including but not limited to:

a.    out of pocket costs for credit monitoring, identity theft insurance, and similar services;

b.    anxiety;

c.    emotional distress;

d.    loss of privacy;

e.    loss of time spent: (i) obtaining and reviewing credit reports (at LendingTree's suggestion); (ii) placing fraud alerts on their credit report (at LendingTree's suggestion); (iii) monitoring their accounts and credit reports on an ongoing basis for unauthorized activity; (iv) scrutinizing communications from lenders; and (v) taking other protective measures in response to the breach; and

f.    other economic and non-economic harm.

25

## COUNT IV

## BREACH OF IMPLIED CONTRACT

### (as to LendingTree)

109.    Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

110.    When entering into transactions with LendingTree, and providing personal information to LendingTree, Class Members entered into implied contracts with LendingTree requiring LendingTree to safeguard their private information.  The implied contracts were based on, *inter alia*, LendingTree's Privacy Policy, which stated that only authorized third parties had access to consumers' personal information.

111.    As noted in LendingTree's California state court complaint: "Customers expect [LendingTree] to ensure the security of their sensitive confidential information and [LendingTree] regards safeguarding its customers' privacy to be an essential obligation."  (State Ct. Compl. ¶ 25.)  Also, "[p]reventing the disclosure of customer information to unauthorized persons is of significant importance to [LendingTree] and its customers."  (State Ct. Compl. ¶ 27.)  This indicates a meeting of the minds between LendingTree and Class Members regarding data security.

112.    LendingTree failed to safeguard Class Members' private information. LendingTree's actions caused Class Members' private information to be disclosed to unauthorized third parties.

113.    Because LendingTree disclosed Class Members' private information to unauthorized third parties, LendingTree breached its implied contract with Class Members.

26

114.     Class Members suffered damages including but not limited to:

        a.      out of pocket costs for credit monitoring, identity theft insurance, and

similar services;

        b.      anxiety;

        c.      emotional distress;

        d.      loss of privacy;

        e.      loss of time spent: (i) obtaining and reviewing credit reports (at

LendingTree's suggestion); (ii) placing fraud alerts on their credit report (at LendingTree's

suggestion); (iii) monitoring their accounts and credit reports on an ongoing basis for

unauthorized activity; (iv) scrutinizing communications from lenders; and (v) taking other

protective measures in response to the breach; and

        f.      other economic and non-economic harm.

## COUNT V

## INVASION OF PRIVACY

### (as to all Defendants)

115.     Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth

herein.

116.     Plaintiff and Class Members have a legally protected privacy interest in their

confidential credit, financial, and other personal information, including their consumer

information, and a reasonable expectation of privacy in such information.  This right of privacy

includes the right not to have someone else profit by the misappropriation and sale or

dissemination of such confidential personal and financial information.

27

117. Defendants and their employees made unauthorized intrusions into Plaintiffs' and Class Members' privacy by accessing, disclosing, disseminating, and/or selling their consumer information without their knowledge, authorization, or consent. This unauthorized disclosure and/or sale of such private facts and information is one that is highly offensive or objectionable to a reasonable person. Moreover, the disclosure of such private facts and information, as alleged herein, does not include information that is of a legitimate public concern.

118. Defendants and their employees violated the rights of privacy of Plaintiff and Class Members by acquiring, disclosing, and/or selling their consumer information without their consent. Plaintiff's and Class Members' consumer information has value, and Defendants' and their employees' unlawful use, disclosure, and/or sale of that information was made for their own benefit.

119. As a result of the unlawful conduct, as alleged herein, the privacy rights of Plaintiff and Class Members have been violated, and Plaintiff and Class Members have been harmed as a result.

120. Plaintiff and Class Members suffered and will continue to suffer actual damages, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and noneconomic harm.

## COUNT VI

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### (as to Mortgage Lenders)

121. Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

28

122.    A contract existed between LendingTree and Class Members, whereby the parties agreed that LendingTree would preserve and protect the confidentiality of Class Members' consumer information.  LendingTree agreed to protect Class Members' consumer information from unauthorized dissemination to third parties including the Mortgage Lenders.

123.    The Mortgage Lenders knew of the existence of contracts between LendingTree and Class Members.

124.    The Mortgage Lenders intended to and did disrupt the existing contracts between LendingTree and Class Members by misappropriating Class Members' consumer information.

125.    The Mortgage Lenders' disruption of existing contracts between LendingTree and Class Members was without justification.

126.    The Mortgage Lenders' misappropriation of Class Members' consumer information reduced the value of the existing contracts between LendingTree and Class Members.

127.    The Mortgage Lenders' misappropriation of Class Members' consumer information made performance of the contracts more burdensome.

128.    Plaintiff and Class Members suffered actual damages as set forth above by the Mortgage Lenders' intentional disruption of Class Members' contracts with LendingTree.

<u>**COUNT VII**</u>

<u>**UNJUST ENRICHMENT**</u>

<u>**(as to Newport and Southern California Marketing)**</u>

129.    Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

29

130. Newport and Southern California Marketing obtained Plaintiff's and Class Members' consumer information without Plaintiff's and Class Members' consent.

131. Newport and Southern California Marketing knew, or should have known, that they obtained Plaintiff's and Class Members' consumer information without Plaintiff's and Class Members' consent.

132. Newport and Southern California Marketing unjustly and unlawfully sold Plaintiff's and Class Members' consumer information to third parties without Plaintiff's and Class Members' consent.

133. Newport and Southern California Marketing have retained the financial benefits they received from unjustly and unlawfully selling Plaintiff's and Class Members' consumer information. Newport and Southern California Marketing conferred a benefit on themselves by unjustifiably using Plaintiff's and Class Members' information.

134. At all relevant times, Newport and Southern California Marketing had knowledge of the benefits they received from misusing Class Members' information. Newport and Southern California Marketing knowingly accepted those benefits.

135. Newport's and Southern California Marketing's retention of the benefits they received from selling Plaintiff's and Class Members' consumer information is inequitable and violates fundamental principles of equity, justice, and good conscience.

## COUNT VIII

### VIOLATION OF NORTH CAROLINA GEN. STAT. § 75-1.1 *ET SEQ.* FOR UNFAIR METHODS OF COMPETITION

### (as to LendingTree)

136. Plaintiff re-alleges paragraphs 1 through 70 of the Complaint as if fully set forth

30

herein.

137.    By reason of the conduct alleged herein, and by failing to provide reasonable security measures for Plaintiff's and Class Members' consumer information, LendingTree violated the provisions of N.C. Gen. Stat. § 75-1.1 *et seq*.

138.    As a result of LendingTree's practices, Plaintiff and Class Members have suffered an injury in fact by, *inter alia*, being exposed to an increased risk of identity theft.  Plaintiff and Class Members have also lost property in the form of their consumer information.  Class Members have also incurred out of pocket costs for credit monitoring and similar services.

139.    LendingTree's conduct proximately caused the injury to Plaintiff and Class Members.

140.    LendingTree's violation of laws by the practices complained of herein constitutes an unfair business practice within the meaning of N.C. Gen. Stat. § 75-1.1 *et seq*.  LendingTree's practices, as described herein, violate federal, state, statutory, regulatory, or industry standards.

141.    The injury to Plaintiff and Class Members caused by LendingTree's failure to adopt and maintain reasonable security procedures to protect their consumer information is substantial.  As a result, the consumer information of Plaintiff and Class Members has been substantially compromised, placing them at risk of being victims of identity theft and suffering other harm.

142.    LendingTree's conduct alleged herein is unfair, unethical, and unscrupulous.

143.    The conduct alleged herein affected commerce within the meaning of N.C. Gen. Stat. § 75-1.1 *et seq*.

## PRAYER FOR RELIEF

31

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a. Certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as class counsel;

b. Finding that Defendants LendingTree, Newport Lending Corp., and Southern California Marketing Corp. willfully, recklessly, or negligently violated the FCRA;

c. Finding that LendingTree was negligent in failing to protect Class Members' private information and failing to timely disclose the breach;

d. Finding that LendingTree entered into and breached implied contracts to safeguard Class Members' private information;

e. Finding that Defendants' conduct constituted common law invasion of privacy;

f. Finding that the Mortgage Lenders' conduct constituted common law tortuous interference with contractual relations;

g. Finding that Defendants Newport and Southern California Marketing are liable for unjust enrichment;

h. Finding that Defendant LendingTree's conduct violated North Carolina Gen. Stat. § 75-1.1 *et seq.* for unfair methods of competition;

i. Finding that LendingTree is responsible for its employees' actions as agents of LendingTree;

j. Requiring that Defendants LendingTree, Newport Lending Corp., and Southern California Marketing Corp. pay statutory damages of not less than $100 and not

32

more than $1,000 under the FCRA;

k.   Requiring that Defendants pay Plaintiff's and Class Members' reasonable attorney's fees and costs of litigation;

l.   Requiring that Defendants pay punitive damages;

m.   Awarding all appropriate damages to Class Members under the common law theories alleged herein;

n.   Enjoining Defendants from actions which place Class Members at a risk of future security breaches;

o.   Awarding injunctive relief including the requirement that LendingTree strengthen its data security procedures to minimize the risk of future security breaches;

p.   Awarding injunctive relief including the provision of credit monitoring, identity theft insurance, identity protection services, or similar services; and

q.   Awarding any other legal and/or equitable relief as justice requires.


Dated: June 23, 2008                    Respectfully submitted,


                                         /s/ Gary W. Jackson                    .
                                        JACKSON & MCGEE, LLP
                                        Gary W. Jackson, NC State Bar No. 13976
                                        Sam McGee, NC State Bar No. 25343
                                        521 East Blvd.
                                        Charlotte, NC 28203
                                        TEL: (704) 377-6680
                                        FAX: (704) 377-6690
                                        *Liaison Counsel for Plaintiff and the Class*


                                        SHELLER, P.C.
                                        Jamie Sheller
                                        1528 Walnut St., 3rd Floor

33

Philadelphia, PA 19102
TEL: (215) 790-7300
FAX: (215) 546-0942
*Pro hac vice admission anticipated*

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Michael T. Fantini
Jon Lambiras
1622 Locust Street
Philadelphia, PA 19103
TEL: (215) 875-3000
FAX: (215) 875-4636
*Pro hac vice admission anticipated*

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Amended Complaint was served upon the Defendant's agent by properly depositing copies of said document, enclosed in a first class, postage paid wrapper in a post office or an official depository under the exclusive care and custody of the United States Post Office and addressed as follows:

Lending Tree, LLC
c/o National Registered Agents, Inc.
120 Penmarc Drive, Suite 118
Raleigh, North Carolina 27603

This the 23rd day of June, 2008.

/s/ Gary Jackson_____

JACKSON & MCGEE, LLP
Gary W. Jackson, NC State Bar No. 13976
Sam McGee, NC State Bar No. 25343
521 East Blvd.
Charlotte, NC 28203
TEL: (704) 377-6680
FAX: (704) 377-6690

*Liaison Counsel for Plaintiff and the Class*

SHELLER, P.C.
Jamie Sheller
1528 Walnut St., 3rd Floor
Philadelphia, PA 19102
TEL: (215) 790-7300
FAX: (215) 546-0942

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Michael T. Fantini
Jon Lambiras
1622 Locust Street
Philadelphia, PA 19103
TEL: (215) 875-3000
FAX: (215) 875-4636

*Counsel for Plaintiff and the Class*
*Pro Hac Vice Admission*

35

36