IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:08-CV-00247

| | |
|---|---|
| SYLVIA CARSON, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LENDINGTREE, LLC, NEWPORT LENDING CORP., SOUTHERN CALIFORNIA MARKETING CORP., HOME LOAN CONSULTANTS, INC., CHAPMAN CAPITAL, INC. and SAGE CREDIT CO., <br><br> Defendants. | MEMORANDUM OF LAW IN SUPPORT OF LENDINGTREE, LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6) |

### I. SUMMARY OF ARGUMENT

Defendant LendingTree, LLC ("**LendingTree**") is an online service, allowing potential mortgage borrowers to obtain multiple quotes from interested lenders. LendingTree does not charge consumers any fee for these services. Plaintiff Sylvia Carson (**"Carson"**) chose to take advantage of LendingTree's service. As consideration for using LendingTree's service, Carson agreed to submit any dispute she might have with LendingTree to arbitration. Carson further agreed to pursue any dispute she may have with Lending Tree one-on-one, foregoing any right she may claim to proceed in any class action.

In direct violation of Carson's agreement, she has now brought this current action. Under the plain text of the parties' agreement, the statutory authority of the Federal Arbitration Act, and well-settled precedent, LendingTree brings this Motion to dismiss the present suit and to compel the parties to individual arbitration.

Carson enjoyed the benefits of LendingTree's service and is legally obliged to meet the commitments she made as a condition of using that service.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. CARSON AGREED TO A TERMS OF USE AGREEMENT GOVERNING LENDINGTREE'S WEBSITE AND FREE ONLINE SERVICES.

Every person who uses the LendingTree website agrees to a Terms of Use Agreement ("**TOU**" or the "**Terms of Use**"). Carson submitted a mortgage request to LendingTree via LendingTree's website on March 21, 2007. (Am. Compl. ¶16; Affidavit of Donald Norton, attached hereto as Ex. A., ¶7.)[1] The very first paragraph of the TOU as constituted on March 21, 2007, all in bold, tells the consumer:

> **This agreement contains an agreement to arbitrate all Claims and disclaimers of warranties and liability. These provisions form an essential basis of our bargain. If you do not agree to these terms and conditions, do not access this Web site.**

(Ex. A, Att. 1.) The scope of the arbitration agreement is very broad, encompassing "[a]ny claim or controversy arising out of or relating to the use of this Web site" and "any acts or omissions for which you may contend LendingTree is liable." (Id.) Per the TOU, all such disputes "shall be finally, and exclusively, settled by arbitration" before the American Arbitration Association ("AAA") under the AAA commercial arbitration rules in effect at that time. (Id.)

The TOU makes very clear that the envisioned arbitration will resolve individual disputes, and that no class arbitration will be allowed:

> **THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND LENDINGTREE WILL BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU THUS GIVE UP YOUR RIGHT TO GO TO**

---

[1] In her Amended Complaint, Carson alleges she submitted an application "[i]n or around March 2007." (Am. Compl. ¶16.) As indicated in Donald Norton's affidavit, LendingTree received a loan request from Carson on March 21, 2007 (Ex. A ¶7), therefore, all references to the TOU in this Memo are to the TOU in effect on March 21, 2007.

- 2 -
Case 3:08-cv-00247-FDW-DCK   Document 22   Filed 07/08/2008   Page 2 of 18

**COURT TO ASSERT OR DEFEND YOUR RIGHTS. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS.**

(Id.) (all emphasis as in original).

Any consumer who uses LendingTree's Web site agrees to these TOU. Moreover, if the Web site user goes on to submit a request, as did Carson, she must actively agree to the TOU. As an unavoidable part of the request process, the user must indicate that she "agree[s] to and accept[s]" the Terms of Use Agreement by checking a box conspicuously labeled "I agree . . ." before proceeding to the request submission page. (Ex. A, Att. 2.) The user can click on a hyperlink prominently labeled "Terms of Use" at this point in the process, which again connects the user to the full TOU. (Id.) Further, the user is directed to print these terms for her records before proceeding. (Id.) The user cannot continue in this process without agreeing to these terms. (Ex. A.) Therefore, to obtain free services from LendingTree, Carson agreed to these Terms of Use.

### B. IN VIOLATION OF THE AGREED-TO TERMS OF USE, CARSON HAS SUED LENDINGTREE IN A PUTATIVE CLASS ACTION.

In violation of the TOU, on May 30, 2008, Carson sued LendingTree before this Court in a putative class action. Carson amended her Complaint on June 23, 2008. Carson alleges that "[a]s part of the application process, LendingTree obtains consumers' confidential information, including their Social Security number, income and employment information, name, address, email address, and phone number." (Am. Compl. ¶15.) Carson contends that consumers' information was "accessed . . . and sold . . . to third parties" by "certain of LendingTree's employees and ex-employees." (Id. ¶1.) As to LendingTree, Carson alleges six causes of action, including alleged violations of the Fair Credit Reporting Act ("FCRA") and North Carolina's unfair competition statute, each predicated on an asserted duty owed by LendingTree to the

applicant and on a perceived defect in LendingTree's conduct with respect to applicant information. Plaintiff alleges that two phone accounts were opened in her name, which she closed at no cost to her.[2] (Id. ¶ 27.)

The Carson action is one of six putative national class actions that followed the LendingTree's announcement that it had been the victim of data theft.[3] (Copies of these Complaints are attached as Ex. B). Plaintiff's counsel in Spinozzi and Carson have moved before the Judicial Panel for Multidistrict Litigation for consolidation of all cases for pre-trial administration in the Western District of North Carolina. (Ex. C.)

By letter dated June 20, 2008, LendingTree, through counsel, requested that Carson honor the terms of the agreement by which she used LendingTree's service, dismiss this suit, and, should she deem it necessary, submit her claims to binding, individual (non-class) arbitration. (Ex. D, Demand Letter.) Carson has refused to do so.

### III. THIS ACTION MUST BE DISMISSED IN LIGHT OF PLAINTIFF'S CONTRACTUAL DUTY TO SUBMIT ALL DISPUTES WITH LENDINGTREE TO ARBITRATION.

#### A. LENDINGTREE'S MOTION MUST BE ANALYZED UNDER THE FEDERAL ARBITRATION ACT.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes a "national policy favoring arbitration." Southland Fin. Servs., Inc. v. Keating, 465 U.S. 1, 10 (1984). The FAA entails "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect…is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement

---

[2] Plaintiff does not allege any facts which, if true, would establish a causal link between the crime against LendingTree and this alleged account activity.

[3] Bercaw v. LendingTree LLC, No. 8:08-cv-660 (C.D.Cal.); Garcia v. Lending Tree LLC, No. 3:08-cv-4551 (S.D.N.Y); Miller v. Lending Tree LLC, No. 1:08-cv-2300 (N.D. Ill.); Mitchell v. Home Loan Center and The Lending Tree, No. 3:08-cv-00303 (W.D.N.C.); and Spinozzi v. LendingTree LLC, No. 3:08-cv-229 (W.D.N.C.).

within the coverage of the Act." Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1993).

Section 2 of the FAA provides in pertinent part:

> A written provision of . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be ***valid, irrevocable, and enforceable***, save upon such grounds as exists at law or in equity for the revocation of any contract.

9 U.S.C. §2 (emphasis added). The United States Supreme Court has recognized that Congress enacted the FAA for the benefit of businesses and consumers alike. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 280 (1995). "Congress has thus mandated the enforcement of arbitration agreements." Southland, 465 U.S. at 10.

### B. PLAINTIFF'S CLAIMS MUST BE ARBITRATED BECAUSE SHE SIGNED A CONTRACT WHICH INCORPORATED A VALID ARBITRATION AGREEMENT AND HER CLAIMS FALL WITHIN THE COMPREHENSIVE SCOPE OF THAT AGREEMENT.

When deciding whether a matter must be submitted to arbitration, the court must determine: (1) whether a valid arbitration agreement exists, and (2) whether the specific dispute falls within the substantive scope of that agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985). If the court concludes that there is a valid arbitration agreement and the matter falls within that agreement's scope, it must refer the case to arbitration without reviewing the merits.

The burden of establishing that the claims at issue are unsuitable for arbitration falls on Plaintiff as the party opposed to arbitration. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000). The burden is not met by "generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants.'" Id. at 89-90.

- 5 -
Case 3:08-cv-00247-FDW-DCK   Document 22   Filed 07/08/2008   Page 5 of 18

Under the United States Supreme Court's two-pronged Mitsubishi Motors analysis, Carson must be compelled to arbitrate. First, Carson manifested her consent to the TOU in consideration for obtaining the use of LendingTree's online services. In fact, a user's submission of an application to a website has been deemed agreement to abide by the terms of use of the website, e.g., forum selection clauses. Fru-Con Const. Corp. v. County of Arlington, No. 1:06CV1, 2006 WL 273583 at *2 (E.D.Va. Jan. 30, 2006) ("Reasoning that the user's explicit agreement to the terms were not a prerequisite to their enforceability, the court held that the user's utilization of the website's service after learning of the terms constituted an acceptance of the terms.") Further, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). Here, the TOU Carson consented to calls for all disputes arising from the use of those services to be submitted to binding, individual (non-class) arbitration.

Tellingly, Carson, a resident of Georgia, chose to bring her suit in North Carolina, precisely what the TOU's forum selection clause requires. (Ex. A, Att. 1 "Should a Dispute arise and should the arbitration provisions herein become inapplicable or unenforceable, or in any instance of any lawsuit between you and LendingTree, the parties agree that jurisdiction over and venue of any suit shall be exclusively in the state and federal courts sitting in Mecklenburg County, North Carolina.")) Further, Carson also chose to abide by the TOU's North Carolina choice of law provision (Ex. A, Att. 1), invoking the choice of law provision in her Amended Complaint, citing North Carolina case law, and bringing claims North Carolina statutory claims . (Am. Compl. ¶¶ 30, 31, Count V.) Thus, Plaintiff appears to understand that the TOU governs

this dispute as she chose to abide by the TOU's forum selection and choice of law provisions. There is simply no basis for selectively applying the various provisions of the TOU.

Second, Plaintiff's challenge to LendingTree's handling of her account information clearly constitutes a claim that falls within the broad scope of the TOU's arbitration provision. (Ex. A, Att. 1.) Carson's Amended Complaint contains numerous allegations "arising out of or relating to [her] use of [the LendingTree] Web site" and of acts and omissions for which Carson asks that LendingTree be held liable. The arbitration provision covers these complaints and contains no exception for security- or data-related concerns. The present action falls squarely within the range of those disputes intended, by the parties' prior written agreement, to be resolved through arbitration.

### C.  THE FAA REQUIRES ARBITRATION EVEN WHERE A PLAINTIFF'S CLAIMS ARISE UNDER A CONSUMER PROTECTION STATUTE.

Carson raises a number of claims under laws designed for the protection of the consumer. Under the FAA, an arbitration agreement cannot be held invalid merely because the plaintiff's claim arises under a consumer protection statute. The U.S. Supreme Court in Randolph held that "even claims arising under a statute designed to further important social polices may be arbitrated[.]" 531 U.S. at 89. In Randolph, the Court noted, followed, and affirmed a long line of precedents in which statutory claims have been compelled into arbitration. See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989) (Securities Act of 1933); Shearson/American Express Inc. v. McMahon, 482 U.S. 220 (1987) (Securities Exchange Act of 1934 and RICO); Mitsubishi Motors Corp., 473 U.S. at 614 (Sherman Act). Each of those statutes provides significant protection for consumers, but never in enacting those important statutes did "Congress … evince[] an intention to preclude a waiver of judicial remedies for the

statutory rights at issue." Randolph, 531 U.S. at 90. Claims brought under these statutes can be vindicated in arbitration and present no conflict with the FAA.[4]

Fourth Circuit law is in accord, compelling consumer protection claims to arbitration where a predispute arbitration provision exists. See, e.g., Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002) (compelling individual arbitration of Fair Labor Standards Act claims); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002) (compelling individual arbitration of TILA and RICO claims); Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 196 (4th Cir. 1990) (compelling individual arbitration federal ADEA claims), aff'd, 500 U.S. 20 (1991).

Carson's claims can be effectively vindicated in arbitration, whether they sound in federal or state law, common law, or statute.

### D. THE FAA REQUIRES ARBITRATION EVEN WHERE THE CLAUSE IN QUESTION WILL REQUIRE THAT PLAINTIFF PROCEED AS AN INDIVIDUAL.

The Fourth Circuit has repeatedly held that a plaintiff cannot defeat a binding arbitration agreement simply by filing suit in a putative class action. See, e.g., Adkins, 303 F.3d at 502 (enforcing arbitration agreement in West Virginia employment contract of adhesion, noting plaintiff's "inability to bring a class action…cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); Snowden, 290 F.3d at 638 (enforcing arbitration agreement in Maryland consumer lending agreement, despite plaintiff's objection that the agreement disallowed class actions).

---

[4] Even consumer class action allegations of criminal fraud and criminal usury may be vindicated in arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) (compelling arbitration despite plaintiff's allegations that contract containing arbitration clause was void for illegality in that it "violated various Florida lending and consumer-protection laws, rendering it criminal on its face.")

In Adkins, the Fourth Circuit cited with approval to a prior decision of the Third Circuit, Johnson v. West Suburban Bank. 225 F.3d 366, 369 (3d Cir. 2000). The Third Circuit, explaining why it compelled non-class arbitration of putative class action claims under TILA and the Electronic Fund Transfer Act ("EFTA") said:

> While it may be true that the benefits of proceeding as a class are unavailable in arbitration, neither statute confers upon plaintiffs the right to proceed as a class. Instead, the right is merely a procedural one, arising under Fed.R.Civ.P. 23, that may be waived by agreeing to an arbitration clause. In sum, because we can discern no congressional intent to preclude the enforcement of arbitration clauses in either statute's text, legislative history, or purpose, we hold that such clauses are effective even though they may render class actions to pursue statutory claims under the TILA or the EFTA unavailable.

Adkins, 303 F.3d at 502. Likewise, there is nothing in the FCRA or the North Carolina unfair competition statute (N.C. Gen. Stat. 75-1.1 *et seq.*), much less in the common law, that would suggest the ability to proceed in a class format is a substantive right, rather than a matter of mere procedure.

In Snowden, the Fourth Circuit rejected "Snowden's argument that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages." 290 F.3d at 638. In large part, the Fourth Circuit rejected this argument because "attorney's fees are recoverable by a prevailing plaintiff in a TILA action and a civil RICO action[.]" Id. (citation omitted); accord Goetsch v. Shell Oil Co., 197 F.R.D. 574 (W.D.N.C. 2000) (compelling individual arbitration of putative consumer class action brought under TILA and Fair Debt Collection Practices Act); Miller v. Equifirst Corp. of WV, No. 2:00-0335, 2006 WL 2571634 at *16 n.2 (S.D.W.Va. Sept. 5, 2006) (noting "a number of decisions from federal courts of appeal, including the Fourth Circuit, in which the waiver of the right to proceed by

class action in the context of an agreement to arbitrate has been upheld"). Carson has brought a claim under the FCRA, which requires an award of attorney's fees to any prevailing consumer.

Further, under the TOU, Plaintiff would be entitled to attorney's fees for any cause of action in which she is the prevailing party. (Ex. A, Att. 1.) Thus, not only the FCRA Count, but every Count of the Complaint is subject to the fee-shifting provisions noted as beneficial by the Fourth Circuit. Therefore, individual arbitration is an appropriate forum for vindication of her claims.

### E. NORTH CAROLINA LAW FAVORS ENFORCEMENT OF ARBITRATION AGREEMENTS.

Having no viable argument under federal law to evade the binding arbitration provision and class action waiver, Carson argues that the TOU is somehow unconscionable as a matter of state law. (Am. Compl. ¶¶28-61.) As noted above, the state law selected by the parties was that of North Carolina. (Ex. A.) Under North Carolina law, the TOU is enforceable, and this Motion must be granted.

North Carolina's practice of enforcing contracts as written applies equally to consumer contracts with arbitration clauses. North Carolina contract law does not allow parties to pick and choose which provisions they would like to honor. "Where the language of a contract is plain and unambiguous, construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions[.]" Burrell v. Sparkkles Reconstruction Co., 657 S.E.2d 712, 716 (N.C. App. 2008).

By agreeing to the TOU, including the class action waiver and arbitration clause, Carson obtained the benefit of LendingTree's services, which were free of charge to her. Carson cannot accrue those benefits and then shrug off the correlative obligations. See, e.g., Pure Oil Co. of the Carolinas v. Baars, 224 N.C. 612, 31 S.E.2d 854 (1944) (holding that, where deed and option

were part of a single transaction, defendants could not keep the benefit of the deed yet strike the option granted to third party.)

In the case at bar, Plaintiff cannot forsake the agreement to arbitrate, having already received the benefit of LendingTree's services. The agreement to arbitrate is "an essential basis of our bargain," as Plaintiff was told from the outset. (Ex. A, Att. 1.)

This is hardly the first time that a party to a contract under North Carolina law calling for arbitration tried to avoid that obligation by asserting that the arbitration clause is unconscionable. Arbitration agreements have been enforced by the courts over a wide range of objections. Miller v. Two State Constr. Co., 118 N.C. App. 412, 455 S.E.2d 678 (1995) (finding arbitration agreement was not unconscionable merely because it entailed a waiver of jury rights); Rodgers Bldrs., Inc. v. McQueen, 76 N.C. App. 16, 331 S.E.2d 726 (1985) (finding arbitration agreement was not unconscionable merely because it encompasses claims of alleged tortious conduct and/or deceptive and unfair practices) (1986); Raper v. Oliver House, LLC, 180 N.C. App. 414, 421, 637 S.E.2d 551 (N.C. App. 2006) (reversing a trial court ruling that the arbitration clause, in a nursing home admission agreement, was unconscionable, despite issues concerning senior care being matter of public interest).

No one compelled Plaintiff to obtain mortgage quotes. No one compelled Plaintiff to use an online service like LendingTree's to help with this process. Certainly, no one compelled Plaintiff to use LendingTree's site as opposed to the sites of LendingTree's many competitors. Plaintiff had a series of meaningful choices; she chose to use LendingTree's free service, in the process agreeing to non-class arbitration; Plaintiff must be bound by that choice. See, e.g., Revels v. Miss N.C. Pageant Organization, Inc., 176 N.C. App. 730, 735 (2006). In Revels, a contestant who had signed an entry form that bound her to arbitrate any disputes she has with the

- 11 -
Case 3:08-cv-00247-FDW-DCK   Document 22   Filed 07/08/2008   Page 11 of 18

pageant brought a suit in federal court. The pageant moved to compel arbitration and the plaintiff countered "that the arbitration clause was unenforceable where the inequality of bargaining power deprived her of a meaningful choice." Id. The North Carolina Court of Appeals rejected this argument. "Where Revels could enter other pageants or choose to not enter a pageant at all, we find that this contention lacks merit." Id. Like Revels, Plaintiff must be held to the consequences of her freely-chosen bargain.

In seeking to evade her contractual obligations, Plaintiff in her Amended Complaint cites to Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93 (2008). (Am. Compl. ¶ 31.) Tillman is the first and only case by a North Carolina appellate court to hold any contract unconscionable. Id. at 111-12 (Newby, J., dissenting). In Tillman, a sharply divided North Carolina Supreme Court found that an arbitration clause in a particular consumer form contract was both procedurally and substantively unconscionable, and therefore could not be enforced. Tillman does not support Carson's opposition to the enforcement of the TOU.

First, as the majority in Tillman noted, "A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Id. at 102. (emphasis added). Here, the TOU is neither procedurally nor substantively unconscionable. The main procedural unconscionability in Tillman was: "[Plaintiffs] were rushed through the loan closings . . . There was no mention of . . . the arbitration clause at the loan closings." Id. at 103. Here, the situation as to the LendingTree TOU was wholly different. Carson was not being "rushed through" anything in submitting an application to LendingTree but was taking just the first tentative step in window-shopping for a new mortgage loan. Carson had all the time she wanted to print and read the TOU, or, since they were provided in electronic format, to even enlarge the TOU's font size or search for important key terms. Additionally, the arbitration

provision was not hidden in the TOU but was highlighted in the agreements' first paragraph. The TOU is simply not procedurally unconscionable.

Likewise, the TOU is not substantively unconscionable. The first stage of the <u>Tillman</u> analysis puts the burden on Plaintiff to show that she, financially, cannot afford to press her claims in arbitration.[5] The second stage of <u>Tillman</u>'s substantive unconscionability analysis looks to the expenses a consumer may have to bear in proceeding in arbitration. While both the <u>Tillman</u> and LendingTree arbitration clauses incorporate by reference AAA rules, the <u>Tillman</u> agreement negated those rules by saying that AAA rules would not apply in the event of a conflict with the original contract language. The LendingTree agreement does precisely the opposite by fully embracing the AAA rules.

Under AAA's Supplementary Procedures for Consumer-Related Disputes[6] the consumer's responsibility for arbitrator fees is capped at a low amount: $125 for claims under $10,000, and $375 for claims under $75,000. (This is less than, or comparable to, the $350 civil filing fee charged by Article III courts to every civil litigant.) AAA has further reserved for itself the right to determine the allocation of costs and expenses between the consumer and the provider of goods and services, without regard to pre-dispute agreements.[7] While AAA has not promulgated bright-line rules for these determinations, AAA does note that, "[i]n some cases, the need to ensure reasonable costs for the Consumer will require the Provider of goods or services

---

[5] Of course, even if this Plaintiff could make this showing with respect to her particular economic condition, that would not allow any other plaintiff or putative class member to skip the same step of substantive unconscionability analysis. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." <u>Randolph</u>, 531 U.S. at 91.

[6] See, Consumer-Related Disputes Supplementary Procedures (effective September 15, 2005) (attached here as Ex. E).

[7] See, Consumer Due Process Protocol, Principle 6, Reasonable Costs (attached here as Ex. F).

to subsidize the costs of ADR which is mandated by the agreement[.]"[8] AAA makes the "Practical Suggestion," which LendingTree intends to follow as to Carson, that, "[i]n the event that an ADR procedure is mandated by the Provider of goods and services and the Consumer demonstrates an inability to pay all or part of the costs of the procedure, the Provider should front such costs subject to allocation in the arbitration award or mediation settlement."[9]

In addition, even in "cases where an AAA administrative fee applies, parties are eligible for consideration for a waiver or deferral of the administration fee if their annual gross income falls below 200% of the federal poverty guidelines."[10] Further, "a party may make a request for a pro bono or reduced rate arbitrator."[11] Given this panoply of protections, all of which the TOU incorporates by reference, "the facts available to the Court at this time do not provide a basis for concluding that the [consumer] likely will be forced to shoulder costs that they cannot bear. And, speculation about the way that the [arbitrator] might handle the [consumer's] complaint does not justify ruling that the [consumer's] arbitration agreement is unconscionable." March v. Tysinger Motor Co., No. 3:07-CV-508, 2007 WL 4358339 at *5 (E.D.Va. Dec. 12, 2007) (compelling individual arbitration to National Arbitration Forum of putative consumer class action). Tillman is not on point.

### G. ANY EXPANSIVE READING OF TILLMAN IS PREEMPTED THE FAA

Tillman is best understood as a narrow opinion addressing a specific set of facts before the Court, facts of alleged procedural and substantive unconscionability not present here. Reading Tillman this way avoids conflict with and preemption by the FAA.

---

[8] Id.
[9] Id.
[10] See, Administrative Fee Waivers and Pro Bono Arbitrators (attached here as Ex. G).
[11] Id.

As discussed above, North Carolina law generally enforces contracts as written. Parties that take advantage of an offered deal are held bound to the terms thereof. North Carolina's unconscionability doctrine has been so sparsely used that never before Tillman has a North Carolina appellate court found a contract unconscionable.

Therefore, Tillman must be read narrowly, to avoid conflict between federal and North Carolina law. Such conflicts have arisen before in North Carolina, resulting in a finding that state laws that impede arbitration are preempted by the FAA. See, e.g., Aspen Spa Props., LLC v. Int'l Design Concepts, LLC, 527 F.Supp.2d 469 (E.D.N.C. 2007) (finding FAA preempted North Carolina's statute forbidding out-of-state arbitrations).[12]

## VI. CONCLUSION

For all of the foregoing reasons, Defendant LendingTree, LLC respectfully requests that Plaintiff's Amended Complaint be dismissed and that Plaintiff be directed that if she wishes to pursue the matter further, she must do so by submitting to arbitration her individual claims against LendingTree, and further requests reimbursement of attorney's fees expended to prosecute this Motion, which merely seeks to compel Carson to live up to the terms of her agreement.

---

[12] However, a finding of preemption is a last resort, and if Tillman can be read so as to coexist with the FAA, that is the appropriate reading.

This 8th day of July, 2008.

Respectfully submitted,

s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
rharrington@rbh.com
Jonathan C. Krisko
N.C. Bar No. 28625
jkrisko@rbh.com
**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-2536

Mark S. Melodia (admitted *pro hac vice*)
mmelodia@reedsmith.com
Paul J. Bond (admitted *pro hac vice*)
pbond@reedsmith.com
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street
Princeton, New Jersey 08540
 (609) 514-6015

*Attorneys for Defendant LendingTree, LLC*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

The undersigned hereby certifies, in accordance with Standing Order No. 3(b)(iv) Governing Civil Case Management Before the Honorable Frank D. Whitney, that this **Memorandum of Law in Support of LendingTree, LLC's Motion to Dismiss Under Rule 12(B)(6)** contains 4,479 words, including footnotes and excluding the caption, signature block and this certification, as verified using the Word Count tool in Microsoft Word 2003.

s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
rharrington@rbh.com
**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-2536

*One of the Attorneys for Defendant
LendingTree, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2008, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF LENDINGTREE, LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Gary W. Jackson
>Sam McGee
>Jackson & McGee, LLP
>221 East Boulevard
>Charlotte, North Carolina 28203
>gjackson@ncadvocates.com
>smcgee@ncadvocates.com

and I hereby certify that I have mailed the document to the following non CM/ECF participants:

>Jamie Sheller
>Sheller, P.C.
>1520 Walnut Street, 3rd Floor
>Philadelphia, Pennsylvania 19102

>Sherrie R. Savett
>Michael T. Fantini
>Jon Lambiras
>Berger & Montague, P.C.
>1622 Locust Street
>Philadelphia, Pennsylvania 19203

This 8th day of July, 2008.

>s/ Robert E. Harrington
>Robert E. Harrington
>ROBINSON, BRADSHAW & HINSON, P.A.
>101 North Tryon Street, Suite 1900
>Charlotte, North Carolina 28246-1900
>(704) 377-2536
>rharrington@rbh.com